IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: ) | |
| ) | |
| WILLIAM LEVI ROSS and ) | Case No. 05-43627 |
| CHANELLE LASHUN HILL, ) | |
| ) | |
| Debtors. ) | |

## **MEMORANDUM OPINION**

This matter comes before the Court on the objection to creditor Daimler Chrysler's ("Creditor") secured claim filed by debtors William Levi Ross and Chanelle Lashun Hill ("Debtors"). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b) and it is a core proceeding which the Court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(B) and (L). This order contains the Court's Findings of Fact and Conclusions of Law as required by Rule 52 of the Federal Rules of Civil Procedure made applicable to this proceeding by Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure. For all the reasons set forth below, the Court sustains the objection to claim.

### I.  FACTUAL BACKGROUND[1]

On February 4, 2005, Debtors financed the purchase of a 2004 Chrysler Sebring (the "Vehicle") for $21,659.50. Creditor provided the financing and retained a purchase money security interest in the Vehicle. *See* Debtor's Brief, p. 5.

Debtors filed a Chapter 13 petition on May 27, 2005[2], and listed Creditor as a secured creditor in the amount of $11,827.50. On June 8, Creditor filed a secured claim for $21,810.14.

---

[1] Unless otherwise noted, all facts were stipulated to by the parties.

[2] Because this case was filed prior to October 17, 2005, it is not governed by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). Pub. L. No. 109-8, 119 Stat. 23 (2005). The Court makes no determination as to what the result of this case would be under BAPCPA.

Debtors objected to Creditor's claim and on September 27, the Court entered an Order allowing the claim as secured in the amount of $14,915.00 based on the parties' stipulation to value of the Vehicle. The remaining balance of $6,895.14 was to be treated as a general unsecured claim. *Id.* On October 12, 2005, Debtors' Chapter 13 Plan was confirmed. On October 16, 2006, Creditor filed a motion to lift stay based on the fact that Debtors had defaulted in plan payments to the Trustee. The Court granted Creditor's motion to lift stay on January 8, 2007, and Creditor subsequently repossessed the Vehicle[3]. *Id.*

On April 1, 2007, Debtors filed an objection to Creditor's claim asking that the secured claim be limited to those amounts already disbursed to Creditor by the Trustee[4]. Trustee filed a response that he had previously paid $5,546.33 principal and $1,600.24 interest to Creditor based on the filed and allowed claim. Creditor filed a response to the objection raising the arguments that § 1329 and the doctrine of res judicata prevent Debtors from changing the classification of the claim.

In Debtors' brief to the objection to claim, they argue that § 502(j) independently provides a means to reconsider and disallow or modify claims and renders moot the res judicata argument set forth by Creditor. Debtors also assert that §1329(a) allows confirmed plans to be modified to reduce payments on claims of a particular class which would encompass the basis of their objection. Also, Debtors contend that *In re Nolan*, 232 F.3d 528 (6th Cir. 2000), cited by

---

[3] There has been no evidence presented to the Court regarding the amount Creditor received from the sale of the Vehicle or the remaining deficiency balance. Debtors stated an amount in their brief but such amount was not stipulated to as fact.

[4] On March 23, 2007, Debtors also filed an amendment to their plan increasing the plan payment to $449.00 per month to satisfy the "POT" (liquidation test) within the confines of § 1322(d). Debtors' amendment was not objected to and the amended plan was confirmed on April 6.

Creditor in opposition to the objection, was wrongly decided and does not properly analyze the relevant statutes or address § 502(j).

In *Nolan,* the debtor sought to modify a confirmed plan to surrender a depreciated vehicle as payment of a secured claim and to designate any deficiency as an unsecured claim. 232 F.3d at 529. The court in *Nolan* held that a bankruptcy court cannot authorize a plan modification that proposes surrender of collateral as payment of a secured claim. The court found that § 1329(a), by its plain terms, permitted modification only of the amount or timing of specific payments but not to increase or reduce the amount of claims. *Id.* at 534. Thus, the court in *Nolan* narrowly interpreted § 1329(a) so as to prohibit a modification that reclassified a deficiency remaining after surrender of a vehicle from secured to unsecured status. The court reasoned that such modification amounts to an impermissible reduction (or disallowance) of a secured claim, an alteration of rights that the *Nolan* court suggested is prohibited by § 1329(a). *Id.* at 532-533.

In Creditor's response brief, it contends that its claim should remain secured in the amount allowed under the Order of the Court entered on September 27, 2005 because Debtors should not be allowed to make a post-confirmation objection to its allowed claim. Relying primarily on *Nolan*, Creditor argues that Debtors cannot modify the plan post-confirmation to reclassify the remaining deficiency owed to Creditor as a general unsecured claim. Creditor argues that the order confirming Debtors' plan has a res judicata effect and that per § 1329[5], only

---

[5]11 U.S.C. § 1329 provides:
 (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to–
(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
(2) extend or reduce the time for such payments; or
(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.
(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

specific modifications are allowed to a plan post-confirmation. Creditor also argues that § 1325(a), as referenced in § 1329, only allows pre-confirmation surrender of collateral.

Additionally, Creditor argues that § 502(j), which provides that a claim may be reconsidered for cause, cannot alter the res judicata effect of the plan confirmation order and that it would be inequitable for a Debtor to be able to change the terms of a plan at any moment. Finally, Creditor asserts that the September 27, 2005, Order of the Court allowing its claim as secured in the amount of $14,915.00 renders any further objection to its claim res judicata and that it would be an unfair shifting of the risk of depreciation to Creditor to allow post-confirmation modification of an allowed secured claim.

## II. DISCUSSION

While § 1327 makes clear that the terms of a confirmed plan are binding on creditors and debtors, § 1329(a) does permit a debtor, the trustee, or an unsecured creditor to request post-confirmation modifications to a Chapter 13 plan before completion of payments under the plan under certain circumstances. *In re Smith,* 259 B.R. 323, 326 (Bankr. S.D. Ill.2001). However, the Court does not need to determine whether § 1329 permits or prevents further modification of the plan at this point. Debtors have not filed a motion to modify. Rather, they have sought reconsideration of Creditor's claim under § 502(j). An order granting Debtors' motion to modify the plan has already been entered and the issue before the Court is whether to reconsider Creditor's previously allowed claim.

Accordingly, the Court will proceed under § 502(j) and determine whether cause exists in this case sufficient to warrant reconsideration of Creditor's secured claim. Section 502(j)

---

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

provides that "[a] claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case. . . ." Section 502(j) and Bankruptcy Rule 3008[6] grant the court the power to reconsider for cause secured claims that previously have been allowed. *See, In re International Yacht & Tennis, Inc.*, 922 F.2d 659, 662 n. 5 (11th Cir. 1991). Neither the Code nor the Rules define "cause" for reconsideration of a claim under 502(j). *See In re Mellors*, ___ B.R. ___, 2007 WL 2153240, *9 (Bankr. W.D. Pa. 2007). However, "bankruptcy courts have wide discretion in determining what will constitute adequate 'cause' for reconsideration of claims." *In re Zieder*, 263 B.R. 114, 116-120 (Bankr. D. Ariz. 2001). Courts have also held that reconsideration can occur after confirmation of a plan. *See, e.g., Id.*

Although the doctrine of res judicata was meant to prevent parties from revisiting issues which were, or could have been, litigated at the time that the plan was originally confirmed, *In re Arnold*, 869 F.2d 240 (4th Cir. 1989), § 502(j) itself carves out an exception to the res judicata effect of § 1327 and exists as a separate and independent authority for reducing claims based on the equities of the case. *See In re Gomez*, 250 B.R. 397, 399 (Bankr. M.D. Fla. 1999); *see also, Zieder*, 263 B.R. at 118.

In a case like this one in which the collateral is repossessed and sold after initial allowance of the claim, the reconsideration and adjustment of the amount of Creditor's secured claim is effected by the interaction between § 502(j) and § 506(a). *See In re Leuellen*, 322 B.R. 648, 654 (Bankr. S.D. Ind. 2005); *see also, Zieder*, 263 B.R. at 117. A claim is only secured to

---

[6] Bankruptcy Rule 3008 provides that:
A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order.

the extent of the value of the property securing the claim. Pursuant to § 506(a), that value is determined based upon the purpose of the valuation and proposed disposition of the collateral. When the plan was confirmed, the vehicle was valued (by agreement) pursuant to a retail standard of valuation since the Debtors proposed to retain the vehicle and pay its value through the plan. *See In re Renzelman*, 227 B.R. 740 (Bankr. W.D. Mo. 1998). However, liquidation value is appropriate to determine the extent of the secured claim after repossession and sale of the collateral by the Creditor. The disposition of the collateral by Creditor subsequent to default and repossession establishes the value of the collateral (and the amount of the secured claim) as well as the unsecured deficiency. This readjustment in the amount of the claim also eliminates the otherwise anomalous result of having a secured claim unsupported by collateral. *See Leuellen*, 322 B.R. at 654; *see also, Zieder*, 263 B.R. at 117

The Court has also considered Creditor's claim of unfair shifting of the risk of depreciation. The fact of the matter is that "the risk of depreciation of collateral is a risk a secured creditor always bears." *Leuellen,* 322 B.R. at 660; *see also Zieder,* 263 B.R. at 118 (stating that the risk of depreciation is something that the secured creditor has by virtue of §§ 502(j) and 506(a)). If the deficiency results from the failure of the stream of payments provided by the plan to match the depreciation in the value of the Vehicle, the Creditor can be faulted for this at least in part for having failed to lodge an appropriate objection to confirmation of such a 13 plan. *See Zieder*, 263 B.R. at 118; *see also, In re Townley*, 256 B.R. 697, 699-700 (Bankr. D.N.J. 2000); *In re Jock*, 95 B.R. 75, 78 (Bankr. M.D. Tenn. 1989). That may not be the problem in this case, however, since as the Debtors point out, Creditor has received approximately 37% of the principal value of its claim over a period comprising approximately

one-third of the anticipated length of the Chapter 13 plan. Assuming the Vehicle depreciated at a relatively steady rate (the Court recognizes that strict straight-line depreciation is probably not the case), the amount paid on the secured claim would appear to be a fair approximation of the depreciation over the period of payments. More likely, most if not all of the difference between the balance on the secured claim and the amount realized on the sale of the Vehicle results from the differences in the applicable valuation standards. (*See In re Wright*, 2005 WL 3752230, *4 (Bankr. D. Kan. 2005) (citing Keith M. Lundin, *Chapter 13 Bankruptcy* § 264.1, at 264-33 (3rd ed. & Supp. 2004)). As noted above, when the Vehicle was valued for purposes of plan confirmation and claim allowance, a retail valuation standard was employed. The amount realized on the sale of the vehicle after repossession would, however, reflect a liquidation measure of valuation. Accordingly, even if the payment stream had precisely tracked the depreciation in the retail value of the Vehicle, there would necessarily be a deficiency when the Vehicle was liquidated after default. It is not "unfair", as the Creditor alleges, to reconsider the claim at this point and equate the remaining amount of the secured claim with the amount received. Rather, it is consistent with the mandate of § 506(a) that the value of collateral securing a secured claim be determined according to the purpose of the valuation and the proposed use or disposition of the collateral.

Furthermore, in this case, Creditor chose to repossess the collateral itself which is distinguishable from those cases, including *Nolan*, in which the debtor surrendered the collateral post-confirmation. While the Creditor argues that permitting reconsideration and reduction of the claim is somehow unfair to it, it overlooks the obvious unfairness to the Debtors and possibly to unsecured creditors of requiring the Debtors to pay for a vehicle they no longer own and

7

cannot afford. *See Leuellen*, 322 B.R. at 658-60; *Zieder*, 263 B.R. at 119. In addition to providing what might be described as a windfall to the Creditor, requiring the Debtors to continue to pay the balance of the originally determined secured claim would either divert income that could otherwise be paid to unsecured creditors or jeopardize the debtors' ability to complete their Chapter 13 plan. *See Leuellen*, 322 B.R. at 658-60; *Zieder*, 263 B.R. at 119. As other courts have noted, Debtors could simply have converted the case to a case under Chapter 7 and surrendered the collateral or dismissed the case and refiled under Chapter 13 with a plan that proposed to surrender the collateral. *See Leuellen,* 322 B.R. at 653; *see also, Zieder*, 263 B.R. at 118; *Jock*, 95 B.R. at 78. In neither of these scenarios would the Creditor realize value in excess of what it has already received from prior payments and sale of the Vehicle.

The facts, as presented to this Court, demonstrate that Debtors submitted an original plan in which Creditor would be paid the value of its collateral as stipulated to by the parties. Subsequently, Debtors' income and employment circumstances changed and they moved to amend the plan based on this change in circumstances. Creditor moved for and obtained relief from stay and subsequently repossessed and sold the vehicle. Based on the foreclosure sale and the amount Debtors had already paid to Creditor through the original plan, Debtors objected to Creditor's claim and seek to have it reduced to a secured claim in the amount that Creditor has already been paid through the plan and the foreclosure sale and have the remaining deficiency balance allowed as a general unsecured claim. Debtors did not voluntarily surrender their vehicle and, after Creditor obtained relief from the stay, Debtors amended the plan[7] and objected

---

[7] The plan funding has been increased by a modification to which the Creditor did not object (and which is now binding on it as well as the Debtor and other parties in interest). Debtors' plan amendment states that the amendment is done to conform to § 1322 and due to the fact that stay relief had been granted to the remaining secured claim. Presumably then, the increased plan payment resulting from the amendment did not include the

to Creditor's claim as originally allowed.

In order for a debtor to obtain relief pursuant to both §§ 1329 and 502(j) of the Bankruptcy Code, the debtor must proceed in good faith. *See Mellors*, 2007 WL 2153240 at *10; *see also, Leuellen*, 322 B.R. at 661. This is a question of fact determined on a case-by-case basis. The undisputed facts of this case demonstrate that Debtors have been, and are, proceeding in good faith. There are no allegations of damage to the collateral or that Debtors have acted in bad faith. Because Creditor voluntarily chose to repossess and foreclose on its Collateral due to a change in Debtors' income the Court finds that the equities of this particular case lie with Debtors and grants their objection to Creditor's claim. *See, e.g., In re Zieder,* 263 B.R. at 116-120 (reconsideration granted permitting debtors to surrender vehicle after an accident); *see also, e.g., In re Jefferson,* 345 B.R. 577, 583 (Bankr. N.D. Miss. 2006) (reconsideration granted permitting debtors to surrender two cars to decrease plan payments due to post-confirmation disability and resultant diminished income); *In re Mason,* 315 B.R. 759, 761 (Bankr. N.D. Cal. 2004) (reconsideration granted allowing debtor to surrender car when debtor could no longer afford it); *In re Hernandez,* 282 B.R. 200, 207-208 (Bankr. S.D. Tex. 2002) (reconsideration granted where there was no showing of improper motive or unfairness, debtors could surrender vehicle in satisfaction of secured claim); *In re Johnson,* 247 B.R. 904, 908-909 (Bankr. S.D. Ga. 1999) (reconsideration is permitted when no bad faith is indicated and loss of debtor's job caused financial hardship); *In re Miller,* 2002 WL 31115656, *4-6 (Bankr. M.D.N.C. 2002) (reconsideration permitted where debtors surrendered tractor 18 months after confirmation and the depreciation was not the result of debtors' abuse or neglect).

---

secured claim at issue and failure of the Chapter 13 plan may be almost a foregone conclusion if the Debtors are also required to continue to pay on the secured claim as originally determined.

Based on the above findings, Debtors' objection is sustained and Creditor may file a claim for a deficiency within 20 days from entry of the Court's order.

### III.  CONCLUSION

For all of the above reasons, the Court sustains Debtors Objection to Claim #0002 of creditor Daimler Chrysler. A separate Order will be entered in accordance with Bankruptcy Rule 9021.


Dated: <u>August 10, 2007</u>                    <u>/s/ Dennis R. Dow</u>

                                                                                  THE HONORABLE DENNIS R. DOW
                                                                                  UNITED STATES BANKRUPTCY JUDGE


Copies to:

Robert B. McMaster

David A. Reed